*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN AMBULATORY SURGICAL CENTER,

        Plaintiff-Appellant,

v

LIBERTY MUTUAL INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
June 16, 2022

No. 356082
Oakland Circuit Court
LC No. 2020-181370-NF

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from injuries Bernard Shaw sustained in a car accident that occurred on February 10, 2019. After the accident, Shaw received treatment for his injuries from plaintiff, which included an injury to his left shoulder requiring surgery. Defendant was the no-fault insurer responsible for providing coverage for Shaw's accident, and Shaw assigned to plaintiff his right to recover payment for plaintiff's services. Plaintiff billed defendant a total of $82,700 for the services it purportedly provided to Shaw. Plaintiff filed this lawsuit asserting defendant refused to pay "necessary and incurred expenses related to [Shaw]'s medical care in accordance with the contract provisions and the No-Fault Act[, MCL 500.3101 *et seq.*]"

In response to plaintiff's complaint, defendant moved for summary disposition under MCR 2.116(C)(10), asserting that it was entitled to judgment as a matter of law because it had, in fact, paid the reasonable costs of the services provided. Defendant explained that it reviewed plaintiff's bills, adjusted some of the charges to an agreed-upon rate under a schedule of rates known as the "Multiplan," and determined that two of the billed items submitted by plaintiff were duplicative of other billed items. Thus, defendant reduced the charges for the duplicative items to zero. It issued payments totaling $33,297.50 and sent plaintiff an "Explanation of Review" (EOR) explaining the adjustments it made, the reasons for making them, and itemizing the amounts billed, adjusted, and ultimately paid.

In response, plaintiff admitted that, of the five "current procedural terminology" (CPT) codes representing procedures for which it invoiced, defendant paid three of them. Plaintiff argued, however, that it was unreasonable for defendant to reduce the amount billed for the other two CPT codes to zero and plaintiff was entitled to payment at the contractual rates for those two procedures as well.

Defendant replied by arguing that payments for two of the procedures, CPT codes 29807 and 29826, were reduced to zero because those procedures were "included in the value of" other procedures plaintiff already billed for; in other words, defendant determined that plaintiff was essentially "double billing" for work accounted for and paid under other CPT codes. Specifically, plaintiff billed for two procedures that describe the surgical arthroscopy and repair of the shoulder "SLAP lesion" (CPT code 29806) and the surgical repair of a ruptured "rotator cuff" (CPT code 23410), and then "unbundled" the procedures and billed separately for arthroscopy (CPT code 29807) and arthroscopy with decompression of the subacromial space (CPT code 29826) of the same shoulder. Defendant explained that it paid the contract rates for only CPT codes 29806 and 23410 and did not pay at all for what it determined were duplicate-billed services (CPT codes 29807 and 29826).

During the trial court's first hearing on defendant's motion, the trial court adjourned the hearing to allow the parties to submit additional evidence in support of their positions. As a result, plaintiff submitted the affidavit of its "biller," Janice Biederman, who acknowledged that billing for both CPT codes 29806 and 29807 should take place only if the surgeon performs one of two, of a possible seven, specific kinds of "SLAP lesion repairs," "Type 2 or Type 4," in addition to a "capsulorraphy [sic] for a different indication." Biederman thus admitted that there should be two separate and distinct reasons for performing a SLAP repair Type 2 or Type 4 together with a surgical capsule repair. Biederman asserted that she billed for both CPT codes 29806 and 29807 because her review of the surgeon's report allegedly revealed "this to have been performed" by the treating surgeon. Biederman also testified that it is appropriate to bill both CPT codes 23410 and 29826 if "arthroscopic subacromial decompression is done, followed by an open or mini-open rotator cuff repair," that she determined from the surgeon's note that this was done, and that she therefore billed defendant in the appropriate manner.

The parties returned to the trial court for additional arguments. The trial court agreed with defendant that plaintiff did not present any evidence beyond Biederman's affidavit and, therefore, failed to present sufficient evidence to create a genuine issue of material fact for trial. This appeal followed.

## II. STANDARD OF REVIEW

"This Court . . . reviews de novo a trial court's decision on a motion for summary disposition." *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015). This Court reviews a motion under MCR 2.116(C)(10) by considering "the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving

party is entitled to judgment as a matter of law." *Uniloy Milacron USA Inc v Dep't of Treasury*, 296 Mich App 93, 96; 815 NW2d 811 (2012) (quotation marks and citations omitted).[1]

## III. ANALYSIS

On appeal, plaintiff contends that the trial court erred when it granted defendant's motion for summary disposition because defendant failed to pay the reasonable amount for medical services provided by plaintiff when it concluded that two of the procedures were duplicative of other charges and declined to pay anything for those two procedures. We disagree.

"Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). "PIP benefits are payable for '[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.' " *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 480; 960 NW2d 186 (2020), quoting MCL 500.3107(1)(a) (alteration in original). And under MCL 500.3157:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge *a reasonable amount* for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance. [Emphasis added.]

A healthcare provider suing an insurer for payment for medical services "has the burden of proving by a preponderance of the evidence the reasonableness of its charges." *Bronson Hosp v Auto-Owners Inc*, 295 Mich App 431, 450; 814 NW2d 670 (2012). This Court explained that "[providers] necessarily make the initial determination of reasonableness by charging the insured for the services. Once [providers] charge the insured, the insurer then makes its own determination regarding what is reasonable and pays that amount to [providers]." *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 379 n 4; 670 NW2d 569 (2003).

Plaintiff submitted a bill with charges it claimed were reasonable for the treatment it provided Shaw. The evidence demonstrates that defendant reviewed the charges, paid three of them in accord with the Multiplan discounted rates, and reduced two other charges to zero after determining that they were duplicative of other charges defendant already paid. Plaintiff concedes that the amounts it received for

---

[1] On appeal, plaintiff contends that defendant's argument regarding duplicative payments was not properly before the trial court, or preserved for this Court's review, because defendant first made the argument in its reply brief to the trial court. Given the general nature of the allegations in its complaint, plaintiff did not fully reveal the nature of its claim until it responded to defendant's motion for summary disposition, in which it asserted it was paid for some but not all of its billed procedures. Moreover, plaintiff's preservation argument rings especially hollow given that it was afforded the opportunity to present additional evidence and argument after defendant filed its reply brief.

the services defendant did consider payable were reasonable. The dispute between the parties, therefore, is whether defendant's refusal to pay for the two disputed CPT codes was unreasonable. And for plaintiff to prevail, it must show the trial court erred when it determined plaintiff failed to show a genuine issue of material fact for trial that the CPT codes were unreasonable.

Defendant presented documentary evidence in the form of the EORs that showed the amounts charged and explained that the two disputed CPT codes were not paid because the value of their services was included in two other CPT codes that were approved and paid. In Biederman's affidavit, she explained that the two disputed CPT codes, 29807 and 29826, could not be properly billed together with CPT codes 29806 and 23410 unless specific conditions were met. With respect to the dual-billing of codes 29806 and 29807, Biederman testified in conclusory fashion that the surgeon's operative report supported such billing, but she did not identify which of the two prerequisite kinds of SLAP repair was performed, or indeed if either of them were performed. Moreover, because Biederman is not a physician, and was not present during the procedure, the source of her conclusion was the surgeon's report, and it is not readily apparent from that report whether the prerequisite procedures were performed to support plaintiff's billing choices. Similarly, Biederman cited her alleged interpretation of the surgical report as supporting the dual-billing of codes 23410 and 29826, but the report does not indicate that the prerequisite procedures were performed in the required manner or sequence. Biederman also cited as bases for her conclusion inadmissible hearsay.[2]

In addition, plaintiff conceded to the trial court that it would be necessary to present the testimony of both its biller *and* its surgeon to support its claims at trial. However, in response to defendant's motion, plaintiff provided evidence from only one of those two sources. In other words, plaintiff failed to present to the trial court any medical testimony supporting its conclusion that the charges for the procedures were reasonable. See *Bronson Hosp v Auto-Owners Inc*, 295 Mich App at 450. Nonmoving parties may not simply promise to present necessary evidence in the future to survive summary disposition, but rather must present it in response to the motion. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999) ("A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10). The court rule plainly requires the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial."). Thus, plaintiff failed to raise a genuine issue of material fact as to whether the disputed charges were reasonable, and the trial court did not err when it granted defendant's motion for summary disposition.

Affirmed. Defendant, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

---

[2] One of the purported bases for Biederman's billing was the language of the Multiplan agreement itself which, despite having the opportunity to submit to the trial court after the first hearing, plaintiff never produced.